Good morning, and may it please the Court. I'm Glenn Cantor, and I represent the appellant, Lydia Winz-Byone. As the Court is aware, the ultimate issue in this matter is whether the appellant's disabling condition of Reflex Sympathetic Dystrophy, RSD, falls under the umbrella of MetLife's policy provision limiting benefits for neuromuscular, skeletal, and soft tissue disorders. In 1964, U.S. Supreme Court Justice Potter Stewart was called upon to attempt to define pornography. Paraphrasing his response, he said, While I couldn't define it, I know it when I see it. Likewise, MetLife has taken an identical position concerning the phrase neuromuscular, skeletal disorder and soft tissue disorder. Now, that's a tricky business because, and I'm not just talking about this case,    I'm talking conceptually, I'm not really down to the fine grain of this case. If we accept what the district court did with respect to conflict of interest and so on, and therefore the discretion in policy stays with the insurance company, if the issue is not whether or not the person is disabled, not discretionary determination, but rather the definition of terms, if we apply contra preferentum and say, well, any ambiguous term is construed against the drafter of the term, I think what that means is the insurance company gets no discretion whatsoever in terms of construing its terms because it will always apply contra preferentum and say, well, to the extent there's an ambiguity, the insurance company loses. Now, what am I supposed to do with that little conceptual, I guess we'll call it syllogism? Well, I guess ideally, from our perspective, what the court would say is the discretionary clause is fine if it's given to an unbiased, unconflicted fiduciary. Well, but I'm assuming for the purpose of the question that this is an unbiased, unconflicted fiduciary. So you don't have to agree with that, but for purposes of my question, I want to assume that we're dealing with a fiduciary that does get the advantage of discretion as we review. Well, I think if that's your underlying factual scenario, then yes, then contra preferentum doesn't apply. But the Supreme Court has said in Metlife v. Glenn that insurance companies are inherently structurally conflicted. That's very much not what they said in Metlife v. Glenn. The abuse of discretion standard still applies. The conflict is a factor to be weighed, but you don't lose the discretion. The point of that decision is that you don't lose the abuse of discretion standard. Well, Your Honor, if that's the position, I still would contend that contra preferentum doesn't apply. Well, let's go to it. How does Metlife v. Glenn support the proposition that we should require an unbiased third-party observer or the court should apply de novo review? Because the whole thrust of that decision is that the court does not apply de novo review. I'm not asking for the court to apply de novo review. Well, that's the point of your argument. You're trying to say it can't be the insurance company's discretion. I think the point of Metlife v. Glenn is it is the insurance company's discretion. Now, you factor into the evaluation of whether there's been an abuse the fact of conflict. But you still have to start with the insurance company. Well, fine, Your Honor. If you take that position, then I would analogize or hope the court would adopt the position by the Fourth Circuit in Carden v. Aetna, where the court specifically said that a fiduciary with, as the Supreme Court said, a higher-than-marketplace standard with obligations solely to the participant. Well, if the fiduciary is taking an ambiguous provision, what can a fiduciary do in that context but decide it in a manner such that it pays benefits to its participant? Counsel, if I understand the contrapreferendum rule properly, it says something to the effect that if there are two reasonable interpretations of the language of a contract and no internal basis for distinguishing between the two, then you construe the language against the draft door and choose the reasonable interpretation favorable to the other party. At what point in this case did your client first attack the use of the phrase in the plan to limit her benefits and offer an alternate interpretation of that language favorable to her? At what point? During the appeal process, Your Honor. She submitted a letter from her doctor, which was, at best, grammatically a disaster. Did he, under your interpretation of his letter, did he say, this is the disabling condition of my patient and it does not fit within the definition of neuromuscular, skeletal, soft tissue disease? Did he ever say that? In those words, no, Your Honor, he didn't. But what he did say, if you look at ER 130, her disability is total and she qualifies for the benefits of a disability plan as far as I can tell according to the outline provided to me by the patient from your company. There's never been any dispute that she was disabled and she was entitled to benefits. The dispute turns on whether those benefits were limited to the 24-month period. And my curiosity is at what point did your client, through her physicians, first challenge the use of that phrase to limit her benefits? During the reconsideration period. During the first two years, her benefits were paid based on her having carpal tunnel. At the end of the two years, she was advised by MetLife that under the limitations provision, it would be terminated. She then advised them that she had RSD. And she actually asked them, is that covered under the condition? And their response was, look at your policy. She submitted a doctor's report that said she had RSD. And as I said, he said as far as I can tell according to the outline provided to me by the patient from your company, she's entitled to benefits. Theoretically meaning RSD is not under the umbrella of MetLife. Did he ever say that? Yes, at ER 130. No, no. Did he ever say her current condition does not fall within the policy limitation? Well, during the appeal, what he said, I'll repeat, her disability is total. And she qualifies for the benefits of a disability plan. And he's writing this in a period based on the RSD. In the same letter, he's discussing the RSD. Doesn't he go on to say her disability is X, which you classify as such and such? Yes, Your Honor. If you read his letter, though, it doesn't make sense. In the same you classify it as such and such. In other words, you're arguing that the reasonable interpretation of the policy that benefits you under the contra-proferendum rule is put forward in a letter that doesn't make sense? Your Honor, first of all, I would back up and say these policies are not generated to be interpreted by doctors. They're generated to be interpreted by plan participants. If we look at this provision, how is a plan participant supposed to understand that a neuromuscular skeletal and soft tissue disorder applies to RSD? She has absolutely no way of knowing that. Can it be interpreted that it does? I suppose. I suppose you could interpret anything as falling under that provision. Bone cancer, neuromuscular skeletal, skeletal is bone cancer, I suppose it would apply. MS, neuro, I suppose it would apply. Well, we could use some generous argument. That is to say they give examples. So do they? They mostly give examples of what isn't covered. But, Your Honor, you mentioned with including but not limited to any disease or disorder of the spine or extremities and their surrounding soft tissue, including sprains and strains of joints and adjacent muscles. Your Honor, I agree. Fine. The average lay person. Should your client's ailment not fall within that description? I would say no. I would say the average lay person would say no. Those are back injuries. Those are injuries in general. You're going to have to support the proposition that we have to look to the average lay person to interpret the policy, which by its terms the plan gives discretion to the insurance company to make that interpretation. I hate the argument if we're in a de novo world or if we're in a world where your client gets to interpret the policy, this may be the case. But that's not the world I think we're in. No, I'm arguing for a world that if a provision is ambiguous, then a fiduciary will apply the terms in the manner in which they're supposed to, which is solely in the interest of the participant. Now, once again, I think you're really uphill here. You're flying the face of lots of precedent with regard to the abuse of discretion standard. It doesn't mean it's an abuse of discretion to interpret it in the way you're arguing. And the abuse of discretion standard is plainly binding upon us. Your Honor, the abuse of discretion is binding under MetLife v. Glenn. However, if this provision is ambiguous, if the court determines it's not ambiguous, I lose. I'll concede that. Then there's no discretion to exercise at all. The whole point of the abuse of discretion standard is it recognizes the possibility of multiple interpretations. And it can't be the case that the insurance company has discretion only to choose an interpretation unfavorable to itself. Well, Your Honor, if that's the case, then the message is to the insurance company, that's the message this court will be delivering. We've given you the right to include discretion in your policies. And MetLife was very careful. They did a very good job of making sure they have discretion. So once we've given you discretion and once you've put in your policy, you can do what you want. You can scatter all the ambiguous provisions you want throughout your policy, because guess what? You get to interpret them to benefit yourself. Counsel, why shouldn't the court simply say that if a claim participant takes the position that you are currently taking, that she is having her benefits limited by an ambiguous provision, that she has the burden to say, wait a minute, the provision is ambiguous. I think there's an interpretation of that provision favorable to me, such and such. Therefore, my particular disability does not fall within the limitation. Why shouldn't we say that's a prerequisite to even getting here? At some point. At some point. Well, that's fine, Your Honor. But give her the opportunity to do it. In this case. Well, here we are in the appellate court. She had the opportunity before MetLife. She had the opportunity before the trial court. She had the opportunity here. I don't want to interrupt you, Your Honor. She tried before the district court. First of all, she was not represented during the pre-litigation process. She's a woman who's on disability, who's taking pain medications. She's documented the record. She sends in the form MetLife sends back, and she gets a doctor to write a letter, and he doesn't know how to interpret this policy. MetLife denies, for the first time on appeal, her claim based on the fact that RSD is a neuromusculoskeletal and tissue disorder. They don't say to her, and if you disagree with that, send us in documentation or have your doctor clarify his position. They just say, your appeal is over. At trial, we try to submit documentation to explain that RSD is not a neuromusculoskeletal disorder. And we try to submit a letter from her doctor clarifying it, but the court said, no, you can't submit it. And MetLife, of course, objected to it. Of course, once again, getting back to the fact that, excuse me, MetLife is supposed to be a claims fiduciary, you wonder why would they object to the introduction of evidence which might be providing additional information to demonstrate what's really going on. They don't want it in because they were able to close that appeal. She had no lawyer. At trial, we tried to do just that. Now, I don't have much time. One other point I would really like to address is the fact that this is a limitation. If this limitation was in a non-ERISA policy, it's MetLife's burden to prove that limitation. If it's in an ERISA policy with de novo, it's MetLife's burden to prove that applicability of that limitation. But Judge Phillips said, no, this is ERISA and they have discretion, so somehow the burden is shifted and the plaintiff has the burden to prove the limitation does not apply to her. Where does that come from? Certainly just because you have discretion. Discretion is not supposed to be a get out of jail free card. The law on limitations and exclusions and insurance companies bearing the burden to prove them has been in the books for 200 years. So why in this one case, because they have discretion, does she now have to prove the limitation doesn't apply to her? And I would argue that if you look at the record, that MetLife fails abjectly to prove that R.S.D. falls under the above. Your counsel, isn't it an accurate statement of what the district court found? Was that there never was a joining of issue. That your client never challenged the contention that her disability fell within the limitation. That all she ever said was, over and over again was, I am disabled, I am disabled, I am disabled. And I mean, that's a conclusion by the trial court, isn't it? Isn't that what the trial court said? Your Honor, I would disagree with that. The trial court just said that the plaintiff has not proven her burden, that the limitation doesn't apply to her. But that's an improper placement of the burden on her. When we tried to introduce evidence, the court said, no, you can't introduce it at trial. It wasn't in the record. But under SAFON v. Wells Fargo, in order to give her a full and fair review, they had to give her the opportunity. To submit that information. They told her for the first time that they were denying her appeal because RSD, they decided, was a neuromusculoskeletal disorder. And they had, the only basis they had for it was the conclusory statements of two doctors. The doctors, Dr. Goetz and Dr. Lumpkins, did not provide an explanation as to why RSD was a neuromusculoskeletal disorder. They just said in their reports, it is. Not why it is. Not why if it's within definition. They just said, yes, it is. Because they never gave my client the opportunity to respond to that point. And when we tried at trial, the court said, no, you should have put it in the administrative record. But she had no lawyer. And they had not given her the denial, the reason for the denial, until the final denial. So how was she supposed to respond? Okay. Why don't we hear from the other side and we'll give you a chance to respond. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court? My name is Ariadne Staples. I represent McClyde. If you could please keep your voice up. Okay. And my colleague Royal Oaks here represents the plan. Counsel argued that the term neuromuscular skeletal and soft tissue disorder was ambiguous. I'm sorry. I can't hear you. Counsel argued that the term neuromuscular skeletal and soft tissue disorder was ambiguous. However, it's clear from the record that Ms. Winsmeyer understood what it meant when her claim was denied because carpal tunnel syndrome fell under the definition. When was the first time your client told her that this was the reason for the denial? The first time she was told was when she was told that her benefits would terminate in June. MetLife sent her a letter on March 27, 2006, informing her that in June of 2006, her benefits would terminate. And did they say in that letter why they were terminated? Because her disease didn't fit within the definition? In the March 27 letter? Rather that it did fit within. Yes. Yes, Your Honor, they did. And where's that in the record? ER-133, Your Honor. ER-133? Yes. Thank you, Your Honor. Okay. So I'm now on page two of that letter where the proper part of the policy is cited. Right. And then they say, well, you've got carpal tunnel syndrome, and that comes within the definition, right? That's correct. But, of course, that's not the only thing she's suffering from. At that point, MetLife didn't know that she had RSD. Okay. When does MetLife first tell her that her RSD disqualifies her? When it upheld this termination, and that was, I believe, July 7th of 2006. And where is that? And that is ER-111 to 113. And at what point, what opportunities does she have at this point to say, but it does fit within this definition? She had an opportunity when she appealed the initial denial. In May of 2006, she submitted her appeal, and with her appeal, she submitted the letter of Dr. Selig, her rheumatologist, and she asked him specifically to opine on this question, whether RSD was a neuromusculoskeletal disorder. And he did so opine, and his opinion was that it was. So she did have an opportunity. So you read her doctor's letter as saying her condition entitles her to the longer benefits. Clearly, Your Honor, her doctor's first letter is in the record at 129 to 130. Right. So you read that as an unambiguous statement by her doctor. I think it's unambiguous. I think that there is a typographical error. He has put a period where it shouldn't have been. But apart from that, I think it is unambiguous, yes. Okay. So she's got evidence in the record in which her doctor says in his medical opinion, not just in terms of what she's suffering from, but in his medical opinion that what she's suffering from does not qualify within the definition that disqualifies her. He says what she's suffering from falls within that definition. His language is she has a condition of reflex sympathetic dystrophy. He describes what it is. And he says this lady has been a patient of mine. She has a condition of reflex sympathetic dystrophy and fibromyalgia. According to your definition of neuromuscular skeletal and soft tissue disorder, which in her case is reflex sympathetic dystrophy of both upper extremities, right much worse than left. It seems clear that that is his opinion, that reflex sympathetic dystrophy, RSD, is a neuromuscular skeletal and soft tissue disorder. I don't think there is another way of reading this. I don't think it is ambiguous. He does not say it is not a neuromuscular skeletal disorder. This is my fault because I'm having trouble with my double negatives and so on. Okay. Now, she's limited to 24 months if she has the neuromuscular skeletal soft tissue disorder. Correct? Yes. That's not in the letter. Yes. Yes. If she has this disorder, all she gets is 24 months. That's correct. And so what she's trying to say is she doesn't have this disorder. No, she didn't say that. She admitted that she has this disorder. In fact, in her appeal letter, which is ER-128. I thought the whole fight was she was saying she didn't have this disorder. I'm sorry? I thought the whole fight is she didn't say it. She said she did not have this disorder. Oh, no, no, no. She said she has this disorder. The fight is that she says the disorder didn't fall within that neuromuscular skeletal limitation. I think one of you is talking about neuromuscular and soft tissue disorder and the other one is talking about reflex sympathetic whatever it is. Oh, I see. I'm so sorry. I misunderstood you. I'll take responsibility. So let's start from the top again. Okay. Okay. If she has what your policy describes as neuromuscular skeletal and soft tissue disorder. Yes. She's limited to 24 months. That's correct. She has something that's called something else, and she's reflexive sympathetic dystrophy. Yes. And she says that does not or her doctor says that doesn't qualify as neuromuscular skeletal and soft tissue disorder. No, Your Honor. Her doctor says that it does. In letter number one, there's a letter number two, which is the fight over what goes into the record. Letter number one is ER-129. ER-129 is the letter that she submitted when she appealed her decision, McLeish's decision. Yes. And what do you make of this? I'm on the second page. It's a very short paragraph. Her disability is total and she qualifies for the benefits of her disability plan. What do you make of that? Whether she qualifies for benefits or not is a legal opinion. This doctor was asked to opine on a medical issue. What I make of it is he didn't realize that her benefits would be limited. He thought that if she was disabled, she should qualify for benefits. I'm with you. Okay. I got it. So as I was saying, the term is not ambiguous at all because she understood it, her doctors understood it, understood what it meant. The doctors that McLeish retained to review her file understood what it meant. Other courts have understood what it meant and have applied the term, the identical provision in other cases. We cited some in our brief and some in our 28J letter. And so it is clear, the term is clear. It is not ambiguous. It is not confusing. Everybody concerned in this case had no difficulty understanding what it meant. Now, so why shouldn't the court say, consistent with its more recent decisions, admittedly all decided after this case went through the district court, so no one can be faulted for not anticipating those decisions and structuring their arguments consistent with them. But let's put that aside and just say, why shouldn't we, consistent with the more recent authority, simply hold that any time MetLife either denies benefits or attempts to limit benefits based upon a provision in its plan, it has the burden to send a letter to the claimant saying, in effect, we are limiting your benefits because of this provision. We conclude that your disabilities fall within this provision. If you disagree, discuss the matter with your physician and provide us a medical report saying your disability does not fall within this provision. Your Honor, the cases that you cite, too, and I'm not sure exactly what they are, but the jurisprudence of this Court is that if the administrator changes the reason for the denial in his uphold letter, in his uphold letter, then he has an obligation to allow the plaintiff or the claimant at that point another bite at the apple, so to speak, another right of review. In this case, the administrator did not change its decision. Well, it kind of did. That is to say, it first said carpal tunnel syndrome doesn't fit. Yes, Your Honor, that's true. But it's Ms. Wins-Byone who actually came back with a new diagnosis, as it were. So it's only if the administrator changes his decision. What MetLife said was your disorder fits within the neuromuscular, skeletal, and soft tissue limitation. It was the same disorder. It may have had a new label. But if you look at the record, and I can point you to the relevant pages, every doctor who describes her symptomatology says exactly the same thing. So basically what MetLife said is in the first letter it said your disorder, which was then carpal tunnel syndrome, falls within the provision. And in the second letter it said your disorder, which was then RSD, falls within the provision. I think this circuit's case of Lamantia v. Hewlett-Packard, which we cite in our brief, it's an unpublished decision, but it is instructive in this regard. Because in that case also, when the claimant came back with a new diagnosis and a new set of symptoms and the administrator simply relied on the old reason for denying benefits, the court said that that was fine, that that passed muster under the rules of this jurisdiction. Because otherwise what would happen is you would be left with this interminable back and forth that courts have criticized, including this court explicitly in the Silver opinion, that every time the administrator says, no, your condition is limited, the plaintiff will come back with a new condition, and then there would be no end to the back and forth between the claimant and the administrator. What this court has said, in no uncertain terms, is if you change your mind between the first decision and the second decision. For example, in Abatey, first the administrator said no waiver of, no fee waiver application, and the second, on the uphold, the administrator said you were not totally disabled or the decedent was not totally disabled for that period of time. That was an entirely different set of circumstances. In Safran, in Safran, in the first letter, the administrator said there is no objective medical evidence. In the second letter, the administrator said when it was too late for the plaintiff to supply it, it didn't do a functional capacity evaluation. That's what this court was concerned about, the issue of unfairness to a claimant who does not have an opportunity to respond to whatever reason the administrator comes up with in the uphold letter. That's not the case here. Well, I think my question, counsel, really went to a different point in time. Conceding your point about, or at least for argument purposes, about their obligation to inform her of the result on the ultimate review, putting that aside momentarily and going back to the first time where all they know about her is carpal tunnel syndrome, didn't they have the obligation initially to send her a letter that says something to the effect that we understand that you were disabled because of carpal tunnel syndrome. We've been paying you benefits for two years. We are about to terminate those benefits because we consider carpal tunnel syndrome to be a neuromuscular skeletal soft tissue disorder. If that is not correct, please inform us. If you have other diagnoses, other reasons why you were disabled, please inform us of those. Well, in effect they did. The March 27th 06 letter says that. It says if she disagrees that she has a right to appeal and it invites her to submit all information she thinks would be helpful to MetLife in her review. It didn't specifically say. You're in effect saying that she never joined issue with MetLife on the question whether her true diagnosis or her complete diagnosis fell within the limitation in the policy. She didn't join issue with MetLife as to whether carpal tunnel syndrome was so limited. She came back with a new diagnosis. And the only document that she submitted in support of that new diagnosis and in support of the question whether or not that new diagnosis fell within the limitation was this letter from Dr. Selig, which I think can only be interpreted to say that yes, it does. That's all that MetLife had. Weren't they obligated at that point to write a letter to her and say something to the effect, we understand that you agree with us that this new diagnosis falls within the limitation. If you disagree with our understanding of your position, please still inform us. Well, no, Your Honor. I don't think it had such an obligation. And I don't think that the law in this circuit or in any other circuit, actually, imposes such an obligation on MetLife. It did a full and fair review. It sent all her medical information, including Dr. Selig's letter, to two independent physician consultants whose independence has not been challenged. Well, is that completely accurate and fair? What? Which two? The two independent reviewers' bias have not been challenged. Yes, Your Honor. They've challenged it all over the place. Well. They say not only are the doctors biased, but the organization that they belong to that essentially markets their services is biased. They do say that, Your Honor, but they don't provide a shred of evidence to support the allegation. They tried to put in a deposition that was thrown out because apparently a Maryland attorney doing a deposition in Maryland of a resident of Maryland had not previously applied for and been granted authority to represent a person in the central district of Maryland. That is true. And you don't defend that. The fact that the district court refused to officially admit the deposition testimony? Well, I think that was within the district court's discretion. A local rule of the central district had been violated. No, I don't think that rule was violated. I read the rule. Well, what the rule says is you have to be admitted for a half-page name. To appear. Okay. But whatever. We could agree to disagree on that. So what if we think that the district judge was wrong in excluding that deposition? Let's assume that the deposition is now properly in front of us. What? Even if you think that the district judge was wrong in excluding that evidence, it is a fact that the district judge nevertheless considered that evidence. And it noted that Dr. Lumpkins has said that she worked 30 percent of her time for reviewers and 15 percent of her time for review services. The district court found that that did not show that Dr. Lumpkins was biased. It certainly is not an indication that MetLife is biased because there was no evidence there as to how much of Dr. Lumpkins' income comes from MetLife. Additionally, I would point out that Dr. Goetz, the orthopedic surgeon, also worked for read review services. And plaintiffs never challenged him, never sought to depose him, and never introduced any evidence into the district court that he was biased. And yet he reached the identical conclusion independently that Dr. Lumpkins reached. So even if you were to throw out Dr. Lumpkins' deposition, even if you were to call her biased, you still have to contend with Dr. Goetz. And there is no evidence, none at all, that he was biased. I don't think there's even an allegation that's in the record below that he was particularly biased. So there is really no evidence of bias. Now, you're well over time. If you have one last thought with which you would like to leave us. Yes, Your Honor. A plaintiff argues, or appellant argues, that MetLife's decision to terminate benefits shortly after she received her workers' compensation benefits was evidence of conflict. If you look at the record from ER 68 to 84, which details a sequence of events, you will find that MetLife actually reached a tentative decision that Carpal Tunnel Syndrome was in fact a neuromuscular skeletal disorder as early as January 15th of that year, two months before it learned of the workers' compensation. Secondly, it's also true that whatever in the workers' compensation settlement that is attributable to lost wages is offsettable. So even if MetLife had decided that she was entitled to benefits beyond two years, it would have been able to offset, continue to offset the workers' compensation benefits. So that really is not a valid argument. Thank you. Thank you very much. I realize I'm in negative time already, Your Honor. And they went over, too. So why don't we start? Let's give you two minutes, and then you can talk fast. Okay. Well, talk fast. I think Judge Singleton had it correct that under SAFON v. Wells Fargo, Ms. Winsboyan has not been given the chance for a full and fair review. I'd also like the Court, if it could, to focus on the two reports of the MetLife doctors, who, yes, we do agree are biased. We argue that MetLife could have sent these reports to any of the doctors that they're in the habit of paying and would have gotten the same result. But here, if you look at it, the doctors don't explain why RSD is a neuromuscular skeletal and tissue disorder. They don't even explain their understanding of what a neuromuscular skeletal disorder is. And MetLife may have its own definition, but theoretically these doctors must have their own, but they don't explain anything. All they say is, yes, RSD falls under this limitation. Well, they say it because that's what MetLife wants them to say. I think that clearly she has not gotten the full and fair review she's entitled to, and most importantly, the burden should not have been on Ms. Winsboyan to prove that her condition was not a neuromuscular skeletal and tissue disorder. The burden is on MetLife, and if you look at the reports of the doctors, they have not proved it. What about counsel cutting the baby in half? Say that the ultimate burden of persuasion remains on MetLife, but she had a burden of going forward with the evidence. She had a burden of coming up with some medical report that said either that the phrase is so ambiguous nobody knows what it means, or I know what it means and it doesn't include her condition. Well, then give her the opportunity to do that, Your Honor, because MetLife didn't. That's the point. MetLife didn't say to her, here are reports from Dr. Goetz and Dr. Lumpkins. You have your doctor dispute them, which she really couldn't have done because they didn't say anything. If you introduce and look at the second letter from Dr. Salek where he is focusing on the issue, he explains based on 40 years of experience as a rheumatologist why he believes that RSD is not a so-called neuromuscular skeletal and tissue disorder. Thank you, Your Honor. I thank both sides for your argument. The case of Wins by Own v. Metropolitan Life is now submitted for decision.
judges: Singleton, Fletcher W. , Clifton